SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**ARIN C. HEINZ, MIB # P90252**
**NATASHA M. GEILING, CAB #341432**
Assistant United States Attorneys
Arin.heinz@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902
Telephone:  (503) 727-1000
Attorneys for the United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:26-cr-00263-SI** |
| **v.** | **GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION** |
| **JACK DANIEL ROWLETT,** | |
| **Defendant.** | |

Defendant Jack Rowlett – an Oregon Correctional Lieutenant – engaged in an online campaign of harassment directed at his ex-girlfriend (Adult Victim 1 or AV1), posting dozens of degrading, harassing, and false posts about AV1 over the span of several months. Though Defendant attempted to thwart detection by using fake profiles and posting anonymously, the FBI linked him to the posts through IP addresses. Amid the tormenting posts, AV1 sought safety through a state protective order. Rowlett, in a continued attempt to obfuscate detection, opposed the protective order and lied during a civil deposition under oath about his conduct. For his online harassment campaign, Defendant is charged with Cyberstalking in violation of 18 U.S.C. §

**Government's Memorandum on Detention**                                                      **Page 1**

2261A(2)(B). Defendant's conduct shows he is a danger to the community, and to AV1. He should be detained pending trial.

## I.    FACTUAL BACKGROUND

### A.  Procedural History

On July 21, 2026, a Grand Jury returned a one-count Indictment charging Defendant with Cyberstalking, in violation of 18 U.S.C. § 2261A(2)(B).  Defendant was arrested on July 30, 2026, and is scheduled to make his initial appearance in Court on the same date.

### B.  Relevant Investigative Background

Adult Victim 1 and Defendant met in approximately 2020 when they were both Oregon Department of Corrections employees at Coffee Creek Correctional Facility. They began a romantic relationship that lasted approximately three years, at times living together and discussing marriage. The relationship ended in November 2023. In January 2024, AV1 and Defendant had an argument over the phone where AV1 reported that it culminated in Defendant threatening to "burn her fucking world down and anybody that's ever touched her." From there, AV1 began to notice an alarming string of events in her life.

Initially, the events started small – Defendant began harassing AV1 by causing third parties to send her notifications of his activity, such as sending her receipts from his purchases at restaurants, and altering past messages or shared calendar invites between them so she would receive alerts. Defendant also repeatedly posted on his social media accounts regarding his breakup with AV1, often referencing infidelity, lying, and narcissists. These posts continued for several months after their break-up, evidencing a deep-rooted anger directed towards AV1.

On January 27, 2024, AV1 went out to a bar in Salem with her friend and left her car in the parking lot overnight. When she came back to retrieve it the next morning, she found two of her car

**Government's Memorandum on Detention**                                    **Page 2**

windows smashed and saw that the only item stolen was her garage door opener. That same

morning, before anyone knew about her car, friends reached out to her, concerned about her safety

because of posts the Defendant made revealing her location. Defendant posted a purported

exchange with a friend, in reference to AV1, and tagged the bar she was at the night before. One of

the posts is depicted below.



AV1 reported the break in to Salem police on February 2, 2024, but they could not

determine who may have been responsible. Regardless, Defendant's post was concerning to AV1

**Government's Memorandum on Detention**                                                 **Page 3**

because it revealed that he knew her whereabouts. From there, Defendant began a campaign of online harassment directed at AV1 that caused her significant emotional distress and harm.

Defendant created two fake social media accounts, posing first as a man named "Cory Johnson" (created April 16, 2024)[1] and then as a man named "Mike Black" (created September 17, 2024). The FBI linked Defendant to these accounts through grand jury subpoenas and search warrants. First, an IP address from the "Cory Johnson" account showed that Defendant was the subscriber for the address. The "Johnson" account was also accessed through the same phone network as Defendant's phone provider. Moreover, multiple IP addresses from Defendant's actual Facebook account and the "Johnson" account were linked.

Defendant, using the "Johnson" account to post anonymously, posed as AV1 by posting pictures of her to solicit unwanted sexual attention from men, thereby creating a safety risk and showing an intent to harass. For example, Defendant posted several pictures of AV1 to the group "Trans Girls, Crossdresser & Shemale Looking for Relationships"[2] with captions like "Looking for a Daddy in Salem, Oregon" (posted June 30, 2024) and "Salem, Or looking for a King" (posted June 25, 2024). Other users in the group responded to the posts inquiring about her location; "Johnson" responded anonymously (posing as AV1) telling the users she lived in Salem, Oregon.

On the same "Johnson" account, Defendant posed as men claiming to have sexual interactions with AV1, in a falsified attempt to warn and brag to other men about her sexual proclivities, risk of STD's, need for attention, and narcissism, amongst other false claims. Though

---

[1] This account has no friends on Facebook and uses a photo of another man. The account messaged AV1 on Facebook on April 19, 2024, but she did not respond.

[2] AV1 does not identify as a member of any of these communities.

**Government's Memorandum on Detention**                                    **Page 4**

the claims were largely false, there were sprinkles of true details that led AV1 to be concerned not only for her safety, but also for her professional reputation. For instance, the posts identified her by name, the city she resided in, details regarding her children, and the name of her personal trainer and gym – which was located in close proximity to her residence. Following these posts, men attempted to contact AV1 on Facebook and, on at least one occasion, approach her in public, resulting in significant personal safety concerns for her and her children. During the public interaction, a man approached AV1 at the gym, asking if she lived on the precise street in Salem that she did, in fact, live on with her two children.[3]

The Johnson posts are too numerous to recite for the Court; there were dozens spanning from June to October 2024. The below examples, however, reflect Defendant's intent.

1. On June 30, 2024, in the group called "Are we dating the same girl Eugene/Springfield Oregon," Johnson posted, along with a picture of AV1:[4] "Anybody married to [AV1]? Super fun, super freaky, but definitely has a shady vibe."

2. On a group called "Lane County Confessions Uncensored," "Johnson" posted on August 23, 2024, along with a picture of AV1: "I confess that after dating [AV1] for 6 months I found out in June that she has a boyfriend. I was mad at first, but I can't stop sleeping with her. My arms are bigger than his so she keeps coming back. Sorry Bro. The only downside is when

---

[3] While the unknown man did not specifically mention information from the Facebook posts, it did occur after the posts were made.

[4] The pictures of AV1 are not included in this filing to protect AV1's privacy.

**Government's Memorandum on Detention**                              **Page 5**

she can't get away for too long I have to drive up to Salem to hit it. Fortunately though if I make time during the day she'll come down to my place while she's 'at work.'"

3. On September 5, 2025, "Johnson" posted, along with a picture of AV1: "Whoever is considering matching with or meeting this girl should really reconsider. She has a Boyfriend, and there's a lot of drama with her. Just because something is fun and easy doesn't mean its a good idea. If you're too hard-headed to take the warning, then at least make sure you use protection, and be ready to deal with her circle of 'friends.'"

4. In yet another post in the group "Are we dating the same girl?," in a chat string titled "Shes [sic] a tramp," "Johnson" posted several images of AV1 with the following comment: "No husband. A boyfriend. Combat vet that takes meds that make him no good in the bedroom. But she needs constant validation. So she needs new men to tell her she has value. Come to find put [sic] she has a man, parties every weekend, and leaves the kid with a sitter. A pill addict, stage 5 clinger, but wide open in bed."  It should be noted that both Defendant and AV1's ex-husband are combat veterans and AV1 does not struggle with pill addiction.

The "Mike Black" is linked to the "Johnson" account as an alternate profile, thereby linking it to Defendant. The account also shared a common IP address with the email associated with the Cory Johnson account and the IP address associated with the creation date of the account showed Defendant was the subscriber.

The "Black" account continued the campaign of harassment, even engaging with the "Johnson" account at times. For example, in response to a "Johnson" post calling AV1 the "South Salem Backpack," "Black" responded on August 8, 2024, "she looks so innocent in this pic. The ones she sends you in messages will show you the other side." Later, on October 24, 2024, "Black" responded to another "Johnson" post by stating, "it's funny how many people have experienced her

**Government's Memorandum on Detention**                                    **Page 6**

on some level." The "Black" account posted numerous other posts, falsely claiming to describe his sexual encounters with AV1, by warning other men about her risk of STD's, and how sexually active she purportedly was. For instance, on September 18, 2024, "Black" commented "I'm only 25, so I usually dont do more than flirt with the older gals, but this one invited me to her house for a shower after the gym the other day and it was wild 😊 ." These posts from the "Black" account are also too numerous to recite for the Court.

Importantly, these posts continued even after AV1 filed a petition for a protective order in Marion County on August 20, 2024, premised largely on the online conduct. Defendant was served with the petition on the next day; yet, as the dates above illustrate, he continued to post under the fake profiles of "Johnson" and "Black," undeterred.[5]

In the litigation surrounding this protective order, Rowlett testified during a deposition that AV1 is emotionally unstable, unreliable, and motivated by hostility towards him while simultaneously denying the social media conduct that he is linked to through IP addresses, as detailed above. For example, during the civil deposition on January 29, 2025, while under oath and represented by counsel, the following exchange occurred:

> Q. Have you ever seen photos of AV1 posted in this group? [in reference to "Are we dating the same girl Portland/Salem/Oregon/Lower Washington and Are we dating the same girl Oregon?]
> A. Only from discovery.
> Q. Have you ever made a post about AV1 to any of those groups?
> A. No.
> Q. And you have no independent knowledge or recollection of following these groups or unfollowing them?
> A. I don't. I don't recognize a lot of these groups on here.

---

[5] In fact, it was not until AV1's counsel requested civil discovery from Defendant in the protective order litigation of his Facebook accounts, including the "Black" and "Johnson" accounts, on October 28. 2024, that the posts stopped.

**Government's Memorandum on Detention**                                     **Page 7**

Defendant also violated the protective order on multiple occasions, which prohibited his contacting AV1 in any way,[6] by: 1) sending her a receipt[7] from the Safeway store after he finished shopping on September 11, 2024; and 2) on January 15, 2025, after a hearing for the protective order case, Defendant texted a screenshot of an old conversation to AV1 that came up in court that day. Though the Marion County DA's office filed charges regarding the protective order violations, they dismissed their charges in lieu of federal prosecution.

Moreover, Defendant has attempted to use judicial and quasi-judicial processes against AV1. In January of 2025, Defendant filed a defamation lawsuit against AV1 in the Circuit Court for Marion County, seeking $2 million in damages from AV1 based on allegations that AV1 falsely accused Defendant of engaging in harassing behavior towards her.[8] Defendant also filed a complaint with the Oregon Government Ethics Commission (OGEC) on April 1, 2025, alleging that AV1 misused her professional position for personal gain by requesting that an attorney from the Oregon Department of Justice attend her deposition taken in the civil stalking protective

---

[6] The Stalking Protective Order prohibits Defendant from contacting AV1 or her immediate family in any way, including but not limited to "coming into the visual or physical presence of [AV1]," "following [AV1]", "waiting outside the home, property [] of [AV1] or of a member of [AV1]'s family or household," "sending or making written or electronic communications in any form to [AV1]", "speaking with [AV1] by any means," "communicating with [AV1] through a third person," "committing a crime against [AV1]," and "communicating with business entities with the intent of affecting some right or interest of [AV1]."

[7] Salem Police Officers collected surveillance from the Safeway purchase which revealed Defendant was the one who completed the transaction.

[8] Though Defendant denied engaging in the online harassment campaign for which he was indicted in the instant matter during his civil deposition in AV1's stalking protective order case, he did not include any allegations by AV1 regarding his involvement in said campaign in his defamation suit.

**Government's Memorandum on Detention**                                      **Page 8**

order case. OGEC opened a preliminary review of the complaint and investigated

AV1; OGEC ultimately did not find cause to proceed with an investigation and the matter was

dismissed. Defendant has also filed complaints against AV1's closest workplace friends and

deposed them during the civil litigation regarding the protective order.

## II.     LEGAL STANDARD

### A.  The Government Moves for Detention Under 18 U.S.C. § 3142(f)(2)(B)

Defendant is charged with a crime – Cyberstalking – that by its very nature involves

intimidating and threatening AV1. Moreover, the conduct detailed above establishes a repeated

pattern of harassment directed toward AV1, even after being ordered by a court to refrain from

contacting her in any form.  This conduct establishes a "serious risk of obstruction or

intimidation—acts that present the greatest risk to the integrity of the judicial process." *United

States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1135 (D. Idaho 2023).  The Government

therefore is entitled to a detention hearing based on the facts detailed above.

Once the Court finds that one of the § 3142(f)(1) or (f)(2) prerequisites is met and a hearing

is authorized, then it considers whether the defendant presents a risk of flight or a danger to any

person or the community. 18 U.S.C. § 3142(e). It is the Government's burden to persuade the Court

that no conditions can adequately mitigate a risk of flight or danger, but either risk can form the

basis of a detention order. Detention is appropriate where a defendant is either a danger to the

community or a flight risk; the government need not prove both. *United States v. Motamedi*, 767

F.2d 1403, 1406 (9th Cir. 1985). The government bears the burden[9] of establishing danger to the

---

[9] The Federal Rules of Evidence do not apply in pretrial detention proceedings. Fed. R. Evid.
1101(d)(3); 18 U.S.C. § 3142(f). Accordingly, either side is permitted to proceed by proffer and

community by clear and convincing evidence; risk of flight need only be proved by a preponderance of the evidence. *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

In weighing what conditions may be appropriate, relevant factors for the Court to consider include: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a minor victim; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, history relating to drug or alcohol abuse, and supervision status at the time of the current offense; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). Several of the factors weigh in favor of detention in this case.

### III.    ARGUMENT

#### A.  Nature and Circumstances of the Offense and Weight of the Evidence

The nature and circumstances of the offense charged, and strength of the evidence weigh in favor of detention. The evidence in this case is strong. There is a digital trail linking Defendant to both accounts as they posted for months about AV1, with a clear intent to target her in a manner that undermined her safety. This evidence alone is sufficient for this Court to find Defendant poses a danger and should be detained pending trial. *United States v. Salerno*, 481 U.S. 739, 742 (1987) (holding that a court may detain a defendant based on community danger alone).

---

to submit hearsay evidence with respect to issues of detention. *See United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986) (citing cases).

When AV1 sought a protective order on August 20, 2024, Defendant opposed the order, leading to depositions being taken.  In his deposition, while under oath and represented by counsel, Defendant was specifically asked about whether he posted about AV1 and he unequivocally denied it, though the digital evidence now shows otherwise. False exculpatory statements are relevant towards consciousness of guilt. *United States v. Pistante*, 453 F.2d 412, 413 (9th Cir. 1971); *United States v. Perkins*, 937 F.2d 1397, 1401 (9th Cir. 1991). Indeed, proof of a guilty mind is additional circumstantial evidence of "the fact of guilt itself," reinforcing the strength of proof in this case. *United States v. Guerrero,* 756 F.2d 1342, 1347 (9th Cir. 1984) (internal citation omitted).

Moreover, in order for this Court to successfully impose conditions on Defendant, this Court has to rely on his assurances and honesty. Defendant's lie speaks to a state of mind that may make him less susceptible to supervision and complying with conditions imposed. Further, the conduct that forms the basis of the indictment occurred at least partially while Defendant was under a court order requiring him to refrain from contact of any kind with AV1; that Defendant continued his campaign of online harassment against AV1 in spite of an existing court protective order illustrates that no combination of conditions is likely to ensure Defendant's compliance and AV1's safety.

Though the charge of Cyberstalking is only punishable by up to 5 years in custody, [10] the consequences for Defendant are significant should he be found guilty because a felony would

---

[10] The Government's present best estimate of the guidelines is that Defendant's base offense level is 18 per U.S.S.G. § 2A6.2(a). Defendant's relevant conduct includes a pattern of activity involving the same victim, so a +2 adjustment applies per U.S.S.G. § 2A6.2(b)(E). His relevant conduct also includes violation of a court protection order, so a +2 adjustment applies per U.S.S.G. § 2A6.2(b)(A). Finally, his relevant conduct includes obstruction of justice due to his lies during his civil deposition, so a +2 enhancement applies per U.S.S.G. § 3C1.1. With a CHC of I, the resulting guidelines without acceptance of responsibility are 41-51 months.

**Government's Memorandum on Detention**                                    **Page 11**

impact his professional career at DOC. In short, Defendant is facing a significant charge supported by a substantial amount of evidence. These factors weigh in favor of detention.

### B. Defendant's History and Characteristics

Defendant has no criminal history and works as a Lieutenant at the Oregon Department of Corrections. He is a father and previously served in the military. These factors weigh against detention. Though he lacks prior criminal convictions, his conduct spanned several months, and he did not stop even when confronted with a court order.

### C. Nature and Seriousness of the Danger Posed

Defendant's conduct spanned several months shows the danger he poses to AV1. *See* Government Ex. 1. Throughout the case, AV1 has expressed concerns about her safety as well as the safety of other women. The Government notified AV1 of this hearing, and it is her request that he remain detained during the pendency of this case.

Moreover, physical harm is not the only harm that a court can consider when determining whether detention is appropriate. In the cyberstalking context, there is also risk that a defendant will continue to engage in harassing online behavior that causes reputational, economic, or psychological harm. *See, e.g.*, *United States v. Wilson-Bey*, No. 2:21-cr-00306-GMN-NJK, 2022 WL 1217188, at *4 (D. Nev. April 25, 2022) ("Defendant can still harm her victims by harassing, threatening, and falsely reporting them to child protective services, which can be done easily by phone or internet, even if supervised, and she has stated her intent to continue doing so.")

## IV.    REQUESTED CONDITIONS

In the event the Court determines release is appropriate, the Government, in consultation with AV1, requests the Court order the following special conditions, in addition to the conditions Pretrial Services proposes:

1. Permit Pretrial Services to install monitoring software on any computer or phone within the Defendant's possession or control that allows random or regular monitoring of the defendant's computer use.  This does not include Department of Correctional (DOC) devices as those are subject to routine DOC monitoring. Pretrial Services will also be allowed periodic inspection of any such computer or phone including retrieval, copying and review of its electronic contents. Defendant is specifically prohibited from using Facebook, Instagram or any other social media website on his phone or computer under his accounts or any other accounts.

2. The Defendant shall not have direct or indirect contact with Adult Victim 1 or her minor children in any form. Defendant is prohibited from traveling to Adult Victim 1's residence or place of employment. This includes on social media through third party accounts, attempting to create accounts in her name, sending unsolicited mail to her residence, and filing false reports (including anonymous ones) about her, in her workplace or in any other form.

3. Submit to location monitoring technology as directed by pretrial services to ensure no contact with Adult Victim 1 and comply with the requirements as directed. Pretrial services will create a zone around Adult Victim 1's residence and place of work to ensure compliance with the above condition.

4. Home Detention

5. Surrender all firearms

## V.    CONCLUSION

Given the significant danger to the community presented by the instant offense, the defendant's lies during his civil deposition, the significant consequences he faces if convicted, the defendant presents an unacceptable danger to the community and specifically to AV1.  The Government respectfully requests that the Court order that Defendant remain in custody pending trial.

**Government's Memorandum on Detention**                                                **Page 13**

DATED:  July 30, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Arin C. Heinz*
ARIN C. HEINZ, MIB # P80252
Assistant United States Attorney

*/s/ Natasha M. Geiling*
NATASHA M. GEILING, CAB #341432
Assistant United States Attorney

Your Honor,

I respectfully request that the court keep Mr. Rowlett in custody as he presents an ongoing danger to my safety.

For nearly three years, his efforts to harm me have continued despite increasingly serious legal consequences. As the consequences of his actions have become more serious, so have his attacks on my life.

The court granted me a protective stalking order – He did not stop.
He was placed on Administrative Leave by our employer – He did not stop.
Criminal charges were filed against him for violating the order – He did not stop.

Your Honor, the last time we were at an arraignment, the judge in Marion County did not enforce the mandatory arrest for violating the order. Mr. Rowlett was given a free pass and released. The following week, there were multiple attacks on my life, targeting my employment, my children and my son's disability services.

This man is a sworn member of law enforcement – a Lieutenant with the Oregon Department of Corrections – and continues to believe he is above the law. He has demonstrated a blatant disregard for the Court's authority and continues to relentlessly attack my life, with events as recent as last month. Based on his pattern of conduct, I fear these attacks will continue to escalate if he is released.

I respectfully ask the court to prioritize my safety in this case and keep him in custody.

Thank you.



**GOVERNMENT EXHIBIT**

**Ex 1**

3:26-CR-00263-SI